IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

TARSHIA WILLIAMS, individually ) Civ. No. 08-00437 ACK-BMK
and as the Personal            )
Representative of the Estate of )
Talia Williams, a Deceased     )
Minor,                         )
                               )
          Plaintiff,           )
                               )
     vs.                       )
                               )
UNITED STATES OF AMERICA       )
                               )
          Defendant.           )
_____)

AMENDED ORDER DENYING PLAINTIFF'S APPEAL OF MAGISTRATE JUDGE'S
ORDER DENYING PLAINTIFF'S MOTION TO CONFIRM TRIAL DATE

FACTUAL BACKGROUND[1/]

     This case arises out of the death of minor Talia

Williams ("Talia") on July 16, 2005.  Compl. ¶ 2.  At the time of

her death, Talia was living with her father, U.S. Army soldier

Naeem Williams ("Williams"), and stepmother, Delilah Williams

("Delilah"), on a U.S. Army Base on Oahu, Hawaii.  Id. ¶¶ 3-4.

Talia allegedly, after suffering seven months of physical abuse

by Williams and Delilah, was fatally beaten by Williams.  Id.

¶ 6.  Williams has been charged with first degree murder and is

currently incarcerated awaiting trial.  Id.  Delilah has pled

_____
[1/]The facts as recited in this Order are for the purpose of
disposing of the current motion and are not to be construed as
findings of fact that the parties may rely on in future
proceedings.

guilty to first degree murder.  Id.

Talia's mother, Plaintiff Tarshia Williams ("Plaintiff"), brought the instant action against the United States (referred to herein as "Defendant," the "United States," or the "Government") in her individual capacity and her capacity as Personal Representative of Talia.  Id. ¶ 11.  Plaintiff alleges that the United States is liable under the Federal Tort Claims Act for, inter alia, negligence and wrongful death because it failed to notice and take appropriate action regarding the abuse of Talia.  Id. ¶¶ 16-24.

## PROCEDURAL BACKGROUND

### I.    The Related Criminal Cases

On July 18 and August 8, 2005, Defendant filed criminal complaints against Delilah and Naeem Williams, respectively. United States v. Williams, Cr. No. 06-00079 DAE-KSC-1 (D. Haw. Aug. 8, 2005), Doc. No. 1; United States v. Williams, Cr. No. 06-00079 DAE-2 (D. Haw. July 18, 2005), Doc. No. 1.

Williams faces two counts of first degree felony murder and one count of obstruction of justice.  On September 8, 2006, Defendant filed a notice of intent to seek the death penalty against Williams.  Williams, Cr. No. 06-00079 DAE, Doc. No. 122. His trial date has been continued multiple times the past six

years.[2/]  Most recently, upon stipulation by the Government and

Williams, the Court continued the trial date from January 2012

until September 4, 2012.  Id. Doc. No. 1665.

     Meanwhile, in December 2006, Delilah pled guilty to one

count of first degree felony murder.  Id. Doc. No. 200.  The

Court sealed portions of Delilah's plea agreement that described

the cause of Talia's death to protect Williams's right to a fair

_____

     [2/]There has been extensive pretrial litigation in Williams's
criminal case, which has involved over 1,600 filings.  As a
federal death penalty case, the prosecution was required to
request and gain approval from the United State's Attorney
General to seek the death penalty.  See United States Attorneys'
Manual § 9-10.040; United States v. Robinson, 473 F.3d 487, 488
(2d Cir. 2007).  Additionally, in this case, Williams moved to
dismiss or strike the death penalty allegations, asserting that
the Federal Death Penalty Act, 18 U.S.C. § 3591 is
unconstitutional.  Doc. No. 309.  Furthermore, Williams has
consented to continuances and waived his right to Speedy Trial.
See e.g., Williams, Cr. No. 06-00079 DAE, Doc. Nos. 287, 481,
711, 759, 875, 1597, 1665.  Reasons that the parties have
requested, and the Court has granted, continuances include that a
number of issues relating to expert witnesses had yet to be
resolved, see id. Doc. No. 481; to allow for a judicial
determination that any conflict between Williams and his own
attorneys is not of constitutional dimension, see id. Doc. No.
711; to allow for the resolution of a then-pending complicated
Daubert hearing, jury selection issues, and other pre-trial
motions that both sides anticipated filing, see id. Doc. No. 759;
scheduling conflicts by counsel for the Government and Williams,
which necessitated a continuance to allow Williams's attorney
time for adequate preparation, see id. Doc. No. 875; over the
Government's objection, to allow Williams's counsel adequate time
to prepare motions relating to two new counts of the Second
Superseding Indictment, the Second Amended Death Notice, and
upcoming mental health evaluations, and to allow for the
location, and transportation to Hawaii, of important witnesses
that are in the Army and were serving abroad, see id. Doc. No.
1068; and a number of important issues had yet to be resolved
(i.e., mental health issues) or even briefed (e.g., diabetes and
dependent personality disorder issues), see id. Doc. No. 1394.

trial.  Id. Doc. No. 224.

## II.  The Instant Civil Case

On October 3, 2008, Plaintiff filed the instant complaint.  Doc. No. 1.  After a scheduling conference, the Court set the bench trial for March 2, 2010.  Doc. No. 11.  On December 2, 2009, Defendant moved to continue trial until the conclusion of Williams's criminal trial.  Doc. No. 28.  Plaintiff opposed the continuance.  Doc. No. 32.  On January 22, 2010, Magistrate Judge Kurren issued an order granting Defendant's motion to continue trial because holding the civil trial before the criminal trial might impact Williams's right to a fair trial. 2010 WL 290542 (Doc. No. 41).  Magistrate Judge Kurren noted that the criminal trial was a death penalty case, that Plaintiff "does not deny that she will seek to introduce details about the nature and causes of Talia's death," and that the release of such details before the criminal trial posed a danger to Williams's right to a fair trial.  Id. at *3.  A new trial was set for March 1, 2011.  Doc. No. 47.  After a status conference, the trial date was continued to January 18, 2012.  Doc. No. 69.  Plaintiff did not file an objection to this continuance.

Meanwhile, on November 10, 2009, Plaintiff moved for a pretrial determination as to the admissibility of twenty-five statements attached to an investigation report of Talia's death prepared by the U.S. Army Criminal Investigation Division.  2010

4

WL 290542 (Doc. No. 41).  Two of these statements were those of Delilah and Williams, which Plaintiff asserted were admissible as statements against interest pursuant to Federal Rule of Evidence 804(b)(3).  _Id._ at *1-2.  Because Rule 804(b)(3) is only applicable when the declarant is unavailable as a witness, the Court deferred ruling on the admissibility of the statements "until it is clear that the witnesses are indeed unavailable." _Id._ at *2.

On April 7, 2010, after briefing by the parties and a hearing, the Court granted in part, and denied in part, a motion for summary judgment filed by Defendant.  711 F. Supp. 2d 1195 (Doc. No. 63).  The Court granted Defendant's Motion as it applied to any alleged negligence by child care workers who had custody and control of Talia in relation to an incident that occurred in February 2005, but denied the remainder of Defendant's motion, which principally focused on arguing that the United States had no duty in this case.  _Id._ at 1201, 1215.

On September 21, 2011, Plaintiff filed a Motion to Confirm Trial Date, which was accompanied by a supporting memorandum ("Pl.'s Mot. Mem.").  Doc. No. 73.  On September 28, 2011, Defendant filed an opposition ("Def.'s Opp'n to Pl.'s Mot.").  Doc. No. 74.  On November 4, 2011, Plaintiff filed a reply.  Doc. No. 75.  Magistrate Judge Kurren denied Plaintiff's Motion on November 30, 2011.  Doc. No. 78.  Magistrate Judge

Kurren concluded that "[b]ecause the civil trial is a bench trial, evidence will be admitted in the civil trial that the criminal court may exclude," and thus a danger of releasing inadmissible evidence prior to the death penalty trial existed. Id. at 4.  He concluded that the pretrial publicity generated from the civil trial would significantly impair Williams's right to a fair trial.  Id. at 4-5.  He summarized as follows:

> [I]f the civil trial were held before the
> criminal trial, the court could not guarantee
> Naeem would have a fair trial in a death
> penalty case because of the media coverage
> that would likely occur.  Therefore, good
> cause exists to modify the schedule in this
> case to continue the civil trial until after
> the criminal trial.

Id. at 5.

On December 14, 2011, Plaintiff appealed the Magistrate Judge's Order Denying Plaintiff's Motion to Confirm Trial Date ("Pl.'s Appeal") and requested oral argument.  Doc. No. 79. Defendant filed an opposition on December 22, 2011 ("Def.'s Opp'n").  Doc. No. 80.

On January 5, 2012, the Court held a hearing on Plaintiff's appeal.

## STANDARD

### I.   Reconsideration of 2010 Order

Defendant asserts that Plaintiff's "Motion to Confirm was effectively a motion to reconsider the Magistrate's January 21, 2010 Order (which plaintiff did not appeal) finding that

'good cause exists to modify the Scheduling Order in the instant case and continue trial to after the criminal trial concludes.'" Def.'s Opp'n 4 (citing Doc. No. 41). Defendant contends, therefore, the standard of review for reconsidering a prior interlocutory order, which requires showing new facts, a change in the law, or manifest error of law or fact, applies. Id.; see L.R. 60.1.

The Court concludes that this standard is met here due to new facts since the 2010 Order. The criminal complaint against Williams was filed back in 2005, and the court did not anticipate that the trial would not have commenced by January 2012. On January 19, 2011, the court set the trial in the civil case for January 18, 2012, to which Plaintiff raised no objection. See Doc. No. 69. However, almost a year has elapsed since setting that date and almost two years since Magistrate Judge Kurren continued the trial date over Plaintiff's objection. The Court finds that under these circumstances, there have been new facts with respect to allowing reconsideration of the January 21, 2010 Order. Thus to the extent reviewing the Magistrate Judge's Order to Confirm Trial Date constitutes a reconsideration of the 2010 Order, the Court will exercise its discretion to reconsider the 2010 order. See Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003) ("Whether or not to grant reconsideration is

7

committed to the sound discretion of the court.").

## II. Review of Magistrate Judge's Interlocutory Order

Pursuant to Local Rule 74.1, any party may appeal from a magistrate judge's order determining a non-dispositive pretrial matter or, if a reconsideration order has issued, the magistrate judge's reconsideration order on such a matter.  The district judge shall consider the appeal and shall set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.  See L.R. 74.1; see also 28 U.S.C. § 626(b)(1)(A); Fed. R. Civ. P. 72(a).  The district judge may also reconsider sua sponte any matter determined by a magistrate judge.  See L.R. 74.1.

"The clearly erroneous standard applies to the magistrate judge's factual findings while the contrary to law standard applies to the magistrate judge's legal conclusions, which are reviewed de novo." Columbia Pictures, Inc. v. Bunnell, 245 F.R.D. 443, 446 (C.D. Cal. 2007).  "[ A] magistrate judge's ruling on discovery issues, including relevancy, is clearly erroneous only when the district court is left with a 'definite and firm conviction that a mistake has been committed.'" JJCO, Inc. v. Isuzu Motors Am., Inc., Civ. No. 08-00419 SOM-LEK, 2009 WL 3569600, at *2 (D. Haw. Oct. 30, 2009).  The district judge may not simply substitute his or her judgment for that of the magistrate judge.  See Grimes v. City & Cnty. of San Francisco,

8

951 F.2d 236, 241 (9th Cir. 1991).  "A decision is contrary to law if it applies an incorrect legal standard or fails to consider an element of the applicable standard."  Na Pali Haweo Cmty. Ass'n v. Grande, 252 F.R.D. 672, 674 (D. Haw. 2008) (internal quotations omitted).

## DISCUSSION

###    I.    Legal Framework

Although a district court may delay a civil proceeding pending the outcome of parallel criminal proceedings, "such action is not required by the Constitution."  Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989). Absent substantial prejudice to the parties, simultaneous parallel civil and criminal actions are unobjectionable.  Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995).  Nevertheless, a court may decide in its discretion to schedule civil proceedings after a related criminal trial "when the interests of justice seem[] to require such action."  Id. (internal quotations omitted).

In determining whether to reschedule a civil proceeding in the face of a parallel criminal proceeding, a court should consider "the particular circumstances and competing interests involved in the case."  Id. (internal quotation omitted).  In Keating v. Office of Thrift Supervision, 45 F.3d 322 (9th Cir. 1995), the Ninth Circuit Court of Appeals set forth factors for a

court to consider when deciding whether to reschedule a civil trial after parallel criminal proceedings.  A court should consider (1) the extent to which a defendant's Fifth Amendment rights are implicated, (2) the plaintiff's interest in proceeding expeditiously, (3) the burden the proceedings may impose on the defendant(s), (4) the convenience of the court and the efficient use of judicial resources, (5) the interests of persons not parties to the civil litigation, and (6) the interest of the public in the pending civil and criminal litigation.  Id. at 324-35.

## II.  The Parties' Arguments

Plaintiff argues that "[t]he Magistrate Judge accepted the Government's general concern about pretrial publicity, and made its ruling without a factual record to support the claim." Pl.'s Appeal 3.  Plaintiff contends that the Magistrate Judge's concern of pretrial publicity is not factually supported because "virtually all of the facts since 2005 have been subject to extensive media publicity."  Id. at 6.  Plaintiff also argues that the Magistrate Judge erred by failing to apply the factors set forth in Keating, and such an application renders rescheduling the civil trial after the criminal trial unwarranted.  Id. at 4.

In its opposition, Defendant argues that avoiding the possibility of prejudicing Williams's rights constitutes good

cause for holding the criminal trial prior to the civil trial. Def.'s Opp'n 6.  Defendant asserts that Keating is distinguishable because in this case, "the key issue is pretrial publicity, and the right of a criminal defendant to a fair trial, matters Keating does not address."  Id. at 5.  Defendant asserts therefore the Court should apply the standard set forth in Federal Rule of Civil Procedure 16(b)(4), which allows a schedule to be modified for good cause, rather than the Keating factors. Id.  Defendant asserts that even if the Court applies the Keating factors, the Magistrate Judge did not err.  Id. at 12.

Defendant noted that in Williams's criminal trial, the Court, over objections of the media, had sealed portions of Delilah's plea agreement that describe the events leading to Talia's death.  Id. at 6.  Defendant states that "[t]rial of the civil matter will inevitably raise the same dangers of publicity and prejudice that the criminal court has tried to prevent."  Id. at 9.  Defendant further avers that "[t]he fact that the civil trial is a bench trial under civil rules, and the criminal trial is a death penalty jury trial under criminal rules, makes it almost inevitable that the civil court will admit evidence that the criminal court will exclude."  Id. at 9-10.  Defendant asserts that such action will result in exposing the jury pool to inadmissible evidence that the Court has attempted to prevent in the criminal case.  Id. at 10.

11

### III. Application of the Keating Factors

Although this case is distinguishable from Keating in several respects, the Court disagrees with Defendant's assertion that Keating is inapplicable to these circumstances.  See Def.'s Opp'n 5-6.  Keating, as here, involved the propriety of holding a civil trial before a related criminal trial when such action would affect the parties' rights, including the Constitutional rights of a criminal defendant.  See Keating, 45 F.3d at 324-26 (considering Defendant's argument that holding the civil trial before his criminal trial violated his due process rights by "forc[ing] him to assert his Fifth Amendment privilege").  Accordingly, it is appropriate to consider the factors set forth in Keating.

The Court nonetheless notes that this is different from the typical case involving related civil and criminal cases in several respects.  First, William's involvement in Talia's abuse and death will inevitably be at issue in the civil trial; Williams, the criminal defendant, however, is not a party to the civil trial.  Second, Williams has more at stake than the ordinary criminal defendant.  "The Court is not dealing with a civil trial or even a criminal trial with less devastating consequences.  Rather, it is dealing with a death penalty case, and one of the few that pass through this Court."  United States v. Williams, Cr. No. 06-00079 DAE, Doc. No. 299, at 7-8.

Although the Court is sympathetic to Plaintiff's position regarding the extended delay of the criminal trial, applying the <u>Keating</u> factors here, the scales tip in favor of upholding the Magistrate Judge's Order Denying Plaintiff's Motion to Confirm Trial Date.[3/]   The Court further notes that Plaintiff's counsel admitted at the hearing that he was unable to find a case where a court proceeded with a civil trial before a related criminal death penalty trial.

### A.   Williams's Fifth Amendment Rights

It is permissible to hold a civil trial at the same time as a related criminal proceeding, even if it necessitates invocation of the Fifth Amendment privilege.  <u>See</u> <u>Keating</u>, 45 F.3d at 326.  It is, however, a significant factor in deciding whether to proceed with the civil trial, which should be considered and weighed against the other relevant factors.  <u>Id.</u>

Plaintiff contends that Williams's Fifth Amendment rights will not be implicated by the civil trial because his post-arrest statements in the investigation report are admissible under Federal Rules of Evidence 801(d)(2), 803(8), and 804(b)(3). The Court disagrees with this statement.

Rule 801(d)(2), which provides that an opposing party's statement is not hearsay, appears to be inapplicable to

---

[3/]The Court notes that there is some overlap in considering the <u>Keating</u> factors.

Williams's statements because Williams is not the opposing party in this case.  Rule 803(8) excludes a record or statement of a public office the hearsay rule in certain situations, but does not appear to apply to Williams's post-arrest statements contained in an investigation report.  See 2010 WL 290542, at *2 (Doc. No. 41) ("Pursuant to the terms of Rule 803(8)(C), only factual findings resulting from an investigation are excluded from the hearsay rule . . . .  Thus, Rule 803(8)(C) does not exclude from the category of hearsay any underlying witness statements contained in [a] [report] because those statements are not factual findings resulting from an investigation.") (internal quotations and citation omitted); San Francisco Baykeeper v. West Bay Sanitary Dist., 791 F. Supp. 2d 719, 744 (N.D. Cal. 2011) ("Rule 803(8) deems a public report admissible based on the notion that its official author knows what he is talking about and will state the facts accurately.  That presumption does not attach to the statements of third parties who themselves bear no public duty to report what they observe.").

　　　　Rule 804(b)(3) provides that statements against interest are excepted from the hearsay rule if the declarant is unavailable as a witness.  Plaintiff has not established that Williams will be unavailable as a witness at trial.  If Williams invokes his Fifth Amendment right not to testify, however, he will be unavailable within the meaning of Rule 804(b).  See

United States v. McFall, 558 F.3d 951, 961 (9th Cir. 2009).
Although the statements might be able to come in at that time, it
will require Williams to invoke his Fifth Amendment right.

The Court nonetheless does not think concern for
Williams's Fifth Amendment rights is significant in these
circumstances.  Williams is not a party to the civil case and the
invocation of his Fifth Amendment right will not prejudice him,
i.e., he will not have to invoke his Fifth Amendment right at the
expense of his civil defense.  See e.g., S.E.C. v. Alexander, No.
10-CV-04535-LHK, 2010 WL 5388000, at *5 (N.D. Cal. Dec. 22, 2010)
("[A]llowing the civil case to proceed in parallel with the
criminal prosecution would effectively force [the defendant] to
choose between defending himself in the civil case and preserving
his Fifth Amendment rights.").

**B.   Plaintiff's Interest in Proceeding Expeditiously**

Plaintiff asserts that she is prepared to proceed to
trial and that delays make her case more difficult to prove as
time goes by and memories fade.  Pl.'s Appeal 13.  Plaintiff
filed her complaint in October 2008, over three years ago.  The
Court agrees that Plaintiff has an interest in proceeding
expeditiously to trial.  The Court also notes that Plaintiff
presumably has an interest in closure of the criminal trial.
Consequently, she has an interest in ensuring that Williams is
properly prosecuted, rather than risking a conviction and

reversal on appeal due to the lack of a fair trial.  Such action would further delay resolution of the criminal case that has been pending for many years now.  Because Plaintiff seeks to proceed to trial, however, the Court finds this factor weighs in favor of not continuing the civil trial and reversing the Magistrate Judge's Order.

### C.   The Burden the Proceedings May Impose on Defendant

The Government has an obvious interest in the proper prosecution of Williams, including ensuring that he receives a fair trial.  <u>See</u> <u>United States v. Davis</u>, 767 F.2d 1025, 1037 (2d Cir. 1985) ("[T]he United States ha[s] a strong national interest in safeguarding the integrity of its criminal process."); <u>United States v. Poole</u>, 379 F.2d 645, 649 (7th Cir. 1967) (recognizing "[t]he interest of the government in the integrity of the criminal process").  The Ninth Circuit has recognized: "'In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors.  The failure to accord an accused a fair hearing violates even the minimal standards of due process.'"  <u>Woodford</u>, 428 F.3d at 1210 (quoting <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961)).  Prejudicial pretrial publicity that affects the impartiality of jurors implicates this right.  <u>See</u> <u>id.</u>

Plaintiff repeatedly refers to the danger from prejudicial pretrial publicity as lacking factual support and

"speculative."  See Pl.'s Appeal 3, 6; Pl.'s Mot. Mem. 2-3, 15-16.  Plaintiff also avers that "almost all of the facts that would be admitted in the civil case have already been reported in the media."  Pl.'s Appeal 3.  First, Plaintiff ignores the Government's point that "a civil trial might revive public knowledge of and interest in the case that have been dormant since shortly after the death of Talia Williams in 2005."  Def.'s Opp'n to Pl.'s Mot. 9.  Indeed, of the thirteen news articles Plaintiff submitted to the Court, ten were published shortly after Talia's death in 2005, one was published in February 2006 after Williams was indicted, and two were published in December 2006 after Delilah pled guilty.  See Pl.'s Appeal Exs. A-M.  The public has likely forgotten this case, or at the least much of the inflammatory details involving Talia's death and abuse, in the six years since Talia's death and five years since Delilah's plea.  The Court finds that a civil trial will reawaken the public's interest and knowledge of this case.

Second, the criminal court found that paragraphs in Delilah's plea agreement "contain significant, and sometimes gruesome, details that have not been collectively released to the media and the public with such detailed specificity."  United States v. Williams, Cr. No. 06-00079 DAE-LEK, Doc. No. 224, at 15.  Plaintiff's assertion that virtually every fact involving Williams has already been reported to the media is therefore

incorrect.

Third, the Court disagrees with Plaintiff's argument that the potential harm from pretrial publicity is without factual support and purely speculative.  Although the Court cannot predict exactly what effect pretrial publicity will have on Williams's Constitutional right to a fair trial, the criminal court has recognized the danger of pretrial publicity, e.g., it sealed portions of Delilah's plea agreement over objections of the media.  See id. Doc. No. 299, at 6-8.  Specifically, the Court noted that it was necessary to seal portions of Delilah's plea agreement "because the pretrial publicity that would be generated by its release would taint the jury, implicating . . . the defendant's right to a fair trial."  Id.   The public interest in the instant case will likely be high, as this civil case involves the alleged repeated abuse and torture of a child by her father and stepmother, the alleged brutal murder of the child by her father, and allegedly the Government's failure to respond appropriately to charges and signs of such abuse.  See Compl. ¶¶ 2-7.  Moreover, because Hawaii does not have the death penalty, and federal death penalty cases are rare in this district, public interest in the criminal trial will be enhanced.

Plaintiff further asserts that "the civil trial will be conducted as a bench trial, and accordingly this Court can implement mechanisms to protect the dissemination of any new

prejudicial evidence." Pl.'s Appeal 6-7. Again, this argument ignores that proceeding with the case will revive the public interest in this matter and expose potential jurors to inflammatory media coverage regardless if new facts are brought to light or not. Furthermore, the press will likely contest the sealing of such evidence, as it did with Delilah's plea agreement in the criminal case. See Williams, Cr. No. 06-00079 DAE-LEK, Doc. No. 204 (Gannet Pacific Corporation, dba The Honolulu Advertiser's Memorandum in Opposition to Government's and Defendants' Motions to Seal Plea Agreements). Moreover, although the Court can seal portions of evidence, it will be required to make findings of fact, and the Court is not convinced it can adequately protect Williams's right to a fair trial. See Fed. R. Civ. P. 52(a)(1) ("In an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately.").

     This factor therefore weighs strongly in favor of holding the civil trial after Williams's criminal trial.

          D.   **The Convenience of the Court and the Efficient Use of Judicial Resources**

     Plaintiff asserts that "[a] further continuance would disrupt the Court's schedule." Pl.'s Mot. Mem. 13. The Court disagrees; a continuance will not burden the convenience of this Court. In fact, given the current timing of the instant appeal, even if the Court were to reverse the Magistrate Judge's order,

it would be unable to reset the trial for January 18, 2012. Instead, the Court would order a scheduling conference and set a new trial date forthright.  Thus, the Court finds the convenience of the Court neutral in these circumstances.

Moreover, the Court finds the trial of this case will reawaken significant prejudicial pretrial publicity and result in the major dissemination of evidence inadmissible in the criminal trial; consequently, the criminal court might be required to grant a motion to change venue.  See Daniels v. Woodford, 428 F.3d 1181, 1210 (9th Cir. 2005) ("[A] court must grant a motion to change venue if prejudicial pretrial publicity makes it impossible to seat an impartial jury.") (internal quotations omitted).  This would result in the inefficient use of judicial resources, as the criminal court has presided over Williams's case, which has gone through extensive pretrial litigation, for years.  This factor thus weighs in favor of rescheduling the civil trial after the criminal trial.

### E.    The Interests of Third Parties

Plaintiff asserts that the family and friends of Talia want closure and thus this factor weighs in favor of Plaintiff. Pl.'s Appeal 13.  The Court has already considered the interest of Plaintiff, Talia's Mother, and finds the interest in closure from Talia's family and friends is far outweighed by Williams's interest in receiving a fair trial.  Additionally, as with

20

Plaintiff, Talia's other family and friends presumably have an interest in closure of the criminal trial.

Williams, facing a death sentence, has a strong interest in receiving a fair trial.[4/] The Supreme Court has stated that "[n]o right ranks higher than the right of the accused to a fair trial." Press-Enterprise Co. v. Superior Court of Cal., 464 U.S. 501, 508 (1984). As discussed above, the Court finds that it cannot ensure Williams will receive a fair trial untainted from prejudicial publicity that would result from holding the civil trial before the criminal trial. Consequently, the Court finds this factor weighs strongly in favor of rescheduling the civil trial after the criminal trial.

### F. The Public Interest

"[T]he public has a clear interest in the speedy resolution of [a] civil action." E.E.O.C. v. Global Horizons, Inc., Civ. No. 11-00257 DAE-RLP, 2011 WL 5325747, at *7 (D. Haw. Nov. 2, 2011). On the other hand, the public also has a strong interest in law enforcement and the proper prosecution of Williams. See id.; see also Richardson v. United States, 468 U.S. 317, 325 (1984) (recognizing the public has an interest in "fair trials designed to end in just judgments") (internal quotations omitted). The Court of Appeals for the Fifth Circuit

---

[4/]Because Williams is not a defendant, he is a third party to this suit.

has counseled that "a trial judge should give substantial weight to [the public interest in law enforcement] in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities." Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962).  The Court therefore concludes this factor weighs in favor of rescheduling the civil trial after the criminal trial.

In sum, the Court finds that the Government's interest in the proper prosecution of Williams, Williams's interest in a fair trial untainted by prejudicial pretrial publicity resulting from a civil trial, and the public's interest in fair trials, outweighs the Plaintiff's interest in proceeding expeditiously to trial.  Accordingly, the Magistrate Judge did not err in denying Plaintiff's Motion to Confirm Trial Date and vacating the trial date set for January 2012.

Upon Plaintiff's request and pursuant to 28 U.S.C. § 1292(b), the Court is of the opinion that its determination that a continuance is needed in this case "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."[5/]

---

[5/]The Court filed its original order denying Plaintiff's appeal on January 6, 2012.  On January 19, 2012, Plaintiff filed a motion requesting the Court amend the order to include a

## CONCLUSION

The Court DENIES Plaintiff's Appeal of the Magistrate Judge's Order Denying Plaintiff's Motion to Confirm Trial Date. The parties are directed to schedule a hearing with the Magistrate Judge to set a trial date following the criminal trial date of September 4, 2012.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 8, 2012.



_____
Alan C. Kay
Sr. United States District Judge


Tarshia Williams v. United States, Civ. No. 08-00437 ACK-BMK: Amended Order Denying Plaintiff's Appeal of Magistrate Judge's Order

---

finding that the order is appealable under 28 U.S.C. § 1292(b). Doc. No. 84.  Defendant filed an opposition on February 2, 2012. Doc. No. 87.  The Court issued an order granting Plaintiff's motion and discusses the parties arguments therein.  See Doc. No. 88.